UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JULIO C. BORRELL,

                              Petitioner            DECISION AND ORDER

-vs-
                                                    12-CV-6582 CJS (MWP)

SUPERINTENDENT OF WENDE CORRECTIONAL
FACILITY,

                              Respondent

_____

INTRODUCTION

Julio C. Borrell ("Borrell" or "Petitioner") is a citizen of the Dominican Republic

who is currently serving a prison sentence in the custody of the New York State

Department of Corrections and Community Supervision ("DOCCS").[1]  Now before the

Court is Borrell's petition for habeas corpus, pursuant to 28 U.S.C. § 2254, which

alleges that the State of New York improperly denied him a form of parole known as

"conditional parole for deportation only" ("CPDO").  The application is denied.

BACKGROUND

New York Executive Law § 259-i pertains to parole for state prison inmates.

Subsections 2(a),(b) and (c) deal with certain procedures for determining whether to

grant parole.  For example, § 259-i(2)(c) requires the Parole Board to consider whether,

if an inmate is released early, he will refrain from committing further crimes, whether

_____

[1] "In 1998, petitioner was convicted of various crimes, including multiple counts of robbery
in the first degree, and he was thereafter sentenced as a second violent felony offender to an
aggregate prison term of 12 1/2 to 25 years." *People ex rel. Borrell v. New York State Bd. of
Parole*, 85 A.D.3d 1515, 1515, 925 N.Y.S.2d 922, 923 (3d Dept. 2011).  Specifically, Petitioner
was convicted under Penal Law § 160.15(2), involving robbery with a deadly weapon. *See, People
v. Borrell*, 73 A.D.3d 1197, 1198, 904 N.Y.S.2d 706, 707 (2d Dept. 2010).

1

his early release would be compatible with the welfare of society and whether early release would deprecate the seriousness of his crimes.  That portion of the statute also directs the Parole Board to consider matters such as the inmate's institutional record.

The instant application arises under another subsection, Executive Law § 259-i(2)(d)(i), which states:

> Notwithstanding the provisions of paragraphs (a), (b) and (c) of this subdivision, after the inmate has served his minimum period of imprisonment imposed by the court, or at any time after the inmate's period of imprisonment has commenced for an inmate serving a determinate or indeterminate term of imprisonment, provided that the inmate has had a final order of deportation issued against him and provided further that the inmate is not convicted of either an A-I felony offense other than an A-I felony offense as defined in article two hundred twenty of the penal law or a violent felony offense as defined in section 70.02 of the penal law, if the inmate is subject to deportation by the United States Bureau of Immigration and Customs Enforcement, in addition to the criteria set forth in paragraph (c) of this subdivision, the board *may* consider, as a factor warranting earlier release, the fact that such inmate will be deported, and *may* grant parole from an indeterminate sentence or release for deportation from a determinate sentence to such inmate conditioned specifically on his prompt deportation. The board may make such conditional grant of early parole from an indeterminate sentence or release for deportation from a determinate sentence only where it has received from the United States Bureau of Immigration and Customs Enforcement assurance (A) that an order of deportation will be executed or that proceedings will promptly be commenced for the purpose of deportation upon release of the inmate from the custody of the department of correctional services, and (B) that the inmate, if granted parole or release for deportation pursuant to this paragraph, will not be released from the custody of the United States Bureau of Immigration and Customs

Enforcement, unless such release be as a result of deportation without providing the board a reasonable opportunity to arrange for execution of its warrant for the retaking of such person.

(emphasis added).[2]

The facts underlying the instant petition are set forth in Respondent's Memorandum of Law [#8], in pertinent part, as follows:

Petitioner was convicted in Queens County Supreme Court under two separate indictment numbers on June 11, 1998 and December 10, 1998, and he is serving an aggregate prison term of from 12 ½ to 25 years.[3]

On December 15, 2009, petitioner appeared before a panel of the Division of Parole ("Parole Board" or "Board") for a hearing on petitioner's parole application. In an interview during the hearing, petitioner discussed with the Board his current crimes, lengthy criminal history,[4] program participation, and disciplinary record.   The Board also discussed with petitioner the fact that he had a final deportation order for the Dominican

---

[2]As can be seen from the quoted language above, § 259-i(2)(d)(i) offers the possibility of parole for deportation to inmates who have reached their parole eligibility date, as well as to inmates who have not reached their parole eligibility date.  The New York State Division of Parole refers to the former type as "Conditional Parole for Deportation Only" ("CPDO") and the latter type as "Early Conditional Parole for Deportation Only," ("ECPDO").  Steward Decl. [#7], Ex. B.  Inmates who have reached their parole eligibility date may be considered for CPDO, "regardless of [the nature of their] conviction." *Id.*  To be eligible for ECPDO, however, the inmate must not have been convicted of certain enumerated crimes. *Id.*  Otherwise, the criteria for CPDO and ECPDO are the same. *See*, Executive Law § 259-i(2)(d)(I).  In the instant case, at all relevant times Petitioner had reached his parole eligibility date, and was therefore eligible for such relief even though he was convicted of a crime of violence, namely, Robbery in the First Degree. *See*, N.Y. Penal Law § 70.02(1)(a) (Categorizing Robbery in the First Degree as a "violent felony offense.")

[3]Petitioner is serving an indeterminate sentence.  Under Executive Law § 259-i(2)(d)(i), relief granted to persons serving an indeterminate sentence is called "parole," while the same relief for persons serving a determinate sentence is called "release."

[4]The record indicates that Petitioner has an extensive criminal history dating back to 1970, with convictions in 1971 (3), 1972, 1974, 1977, 1987, 1993 and 1998.

3

Republic and asked him about the circumstances awaiting him there.[5]

On December 16, 2009, the Parole Board issued a decision denying parole and ordering a 24-month hold. The Board concluded that if petitioner were released, there was a "reasonable probability that [he] would not live at liberty without violating the law," and that his release would "so deprecate the seriousness of this crime as to undermine respect for the law." The Board determined that petitioner's participation in prison programs and vocational achievements was outweighed by his criminal behavior and his poor record of adjustment in prison, including multiple Tier II and Tier III infractions.[6]

\* \* \*

On May 17, 2010, petitioner filed an administrative appeal with the Division of Parole Appeals Unit, which affirmed the decision of the Parole Board and notified petitioner of that decision on October 29, 2010.[7]

While petitioner's administrative appeal was still pending, he filed a *pro se* state petition for a writ of habeas corpus, pursuant to Article 70 of the New York Civil Practice Law and Rules, dated June 24, 2010, in the Chemung County Supreme Court, seeking immediate release from incarceration so that he could be deported. Petitioner argued that, in light of the final order of deportation issued against [him], the Parole Board violated [his] Due Process and Equal Protection rights by denying his

---

[5] The Parole Board discussed with Petitioner his plans if he were paroled to deportation, such as where he would live and what he would do for employment. *See*, Steward Decl. [#7] at Ex. C, Transcript of Parole Hearing, at pp. 5-6.

[6] The record indicates that with regard to his current term of imprisonment, at the time of his parole hearing he had twenty-three (23) Tier II disciplinary infractions and eleven (11) Tier III disciplinary infractions. Steward Decl. [#7], Ex. C.

[7] The Parole Board stated in pertinent part: "[T]he Board was not required to release petitioner to parole supervision merely because he had a deportation order. Executive Law § 259i(2)(c) simply provides that, in addition to the other statutory factors to be considered at a regular appearance, the Board must also consider the deportation order in determining the appropriateness of the inmate's parole release." Steward Decl. [#7], Ex. A (citations omitted).

request to be given Conditional Parole for Deportation Only ("CPDO").[8]
Respondent filed an affirmation opposing petitioner's claims.

In an Order dated September 28, 2010, the Chemung County Supreme
Court denied the petition.  The court recognized that "[t]here is no
requirement that the Board release petitioner to parole supervision or grant
him CPDO merely because he has a deportation order; rather, the Board is
only obligated to consider the deportation order in addition to other
statutory factors when determining the appropriateness of an inmate's
parole release."

The court also noted that "petitioner made it clear that he did not
challenge the parole denial, and claimed that he was not required to
exhaust his administrative remedy in this case."  Petitioner also did not
seek a new parole hearing, but only his immediate release for deportation.
The court determined that, since the appeal of petitioner's Parole Board
determination had not yet been decided, "this is also a case of failure to
exhaust available administrative remedies which requires a denial of the
petition." (citing 9 N.Y.C.R.R. § 8006.4(c))).

Petitioner thereafter moved the Chemung County Supreme Court for
reconsideration of his habeas petition.[9]  Respondent filed an affirmation

---

[8]Petitioner stated, in pertinent part:  "I had a parole hearing on 12/15/09 and was not given
deportation (regular CPDO) in violation of federal and state laws.  My written and oral requests for
deportation were totally ignored.  The relevant part of Executive Law 259-I is written in vague and
confusing terms.  "Regular" CPDO, as effected and applied by the NY Board of Parole is
constitutionally infirm; it violates due process of law and equal protection.  The administrative
appeal to the Board of Parole, in a regular CPDO case, is futile - indeed a phantom process (in
fraud).  There is no need, in this case, to exhaust remedy [sic] in such situation." Steward Decl.
[#7], Ex. B (emphasis in original).  Later in his application, Petitioner reiterated that the Parole
Board's denial of his request for CPDO "was not given to [him] in violation of U.S. Constitutional
law as well as New York Statutes," and that he was not seeking a new parole hearing, but
"immediate release for deportation."  Id.  Petitioner further stated that his request for CPDO was
"completely ignored" becuase "the parole decision [was] silent as to anything and everything that
concerns CPDO." Id.

[9]As part of that application, Petitioner admitted that the Parole Board was not required to
grant his request for CPDO, but argued that the Parole Board was required to "decide" his request,
which, he maintained, it did not do. See, Steward Decl., Ex. E, ¶ ¶ 3-4.  In that regard, he stated
that the Parole Board's failure to "decide" his request was evidenced by the fact that the Board's

opposing petitioner's motion for reconsideration, and petitioner filed two letters in reply.  On December 22, 2010, the Chemung County Supreme Court denied reconsideration.

Petitioner filed a *pro se* appeal in the Appellate Division, Third Department, raising essentially the same claims he had raised in his state habeas corpus petition.   Respondent filed a brief opposing petitioner's claims, and petitioner filed a reply.

On June 30, 2011, the Appellate Division unanimously affirmed the decision below. *People ex rel. Borrell v. New York State Bd. of Parole*, 85 A.D.3d 1515 (3d Dep't 2011).   The Appellate Division held that "[c]ontrary to petitioner's contention, an inmate who has completed his minimum prison term and is subject to a final order of deportation is not entitled to conditional parole for deportation only." *Id*. (citations omitted). Thus, the court concluded, "inasmuch as parole decisions are discretionary and, in any event, the remedy for an improper denial of parole would be remittal to the Board and not immediate release, the denial of parole may not be challenged by way of a writ of habeas corpus." *Id*. at 1515-16 (citations omitted).

Petitioner applied for leave to appeal to the New York Court of Appeals. Respondent filed a memorandum of law opposing petitioner's leave application.  Petitioner thereafter filed a reply.  On November 22, 2011, the New York Court of Appeals denied leave to appeal. *People ex rel. Borrell v. New York State Bd. of Parole*, 17 N.Y.3d 718 (2011).  Petitioner subsequently filed a motion for reargument.  On February 14, 2012, the Court of Appeals denied petitioner's reargument motion. *People ex rel. Borrell v. New York State Bd. of Parole*, 18 N.Y.3d 904 (2012).

---

decision did not specifically discuss his request for CPDO or the reasons why it did not grant the request. *Id*.  At the same time, though, Petitioner argued that "[t]he board clearly abused its governmental power when it deliberately ignored (did not answer yes or no) my request for CPDO because the board knows very well that there are no reasons under which such CPDO alternative and supplement [sic] can be denied to me." *Id*. at ¶ 7 (emphasis added).  Consequently, Petitioner did in fact argue that the Parole Board was required by law to grant his request for CPDO.

Respondent's Memo of Law [#8] at pp. 2-6.

On October 29, 2012, Petitioner commenced this action, styled as a petition for writ of habeas corpus under 28 U.S.C. § 2241.  The Court is treating the application as being made pursuant to 28 U.S.C. § 2254, with Petitioner's consent. See, Docket Nos. [#4] & [#5].  The Petition purports to assert five separate grounds.

First, the Petition contends that the Parole Board violated "Federal due process of law and parallel state law" by failing to either deny or grant his request for CPDO. On this point, Petitioner maintains that the Parole Board's decision was "absolutely silent concerning CPDO."  Petitioner admits that the decision denied him parole, but he contends that there is a significant difference between CPDO and parole.  Namely, he contends that "parole" refers to an inmate being released back into the U.S. community, which is not possible for him since he is not a U.S. citizen and is subject to a final order of removal. Petition [#1] at p. 2.  Petitioner contends that the factors that the Parole Board considers when deciding whether to parole a U.S. citizen have no relevance to him, since he will be deported if released from prison.

Second, Petitioner contends that the New York State Courts that denied his state habeas application denied him due process and access to the courts, because they "purposely and maliciously" misstated the grounds for his application. Petition [#1] at p. 2.  More specifically, he contends that the state courts falsely indicated that he said the Parole Board had denied his request for CPDO, when he actually said that the Board failed to decide his request.  He also indicates that the State Courts falsely indicated that he believes that he is entitled to CPDO as a matter of right.

7

Third, Petitioner maintains that the Parole Board violated his right to "equal treatment and protection under the laws," because it effectively denied his request for CPDO, but granted CPDO to Sorin Cherlea ("Cherlea"), a Russian inmate, in 2007. Petition [#1] at p. 2. Petitioner contends that the Parole Board granted CPDO to Cherlea even though Cherlea's crime was "terrorist in nature," and involved robbery, kidnapping, and threats to detonate explosives. *Id.* at pp. 32. The Parole Board concluded that "releasing" Cherlea on parole would be "incompatible with public safety and welfare," and "would so deprecate the serious nature of [his] offense as to undermine respect for the law." *Id.* However, the Parole Board released Cherlea to CPDO. *Id.* On these facts, Petitioner contends that the Parole Board should have also released him on CPDO, and that its failure to do so was "discrimination." *Id.* at p. 13. At the same time, though, Plaintiff's papers indicate that he and Cherlea were not similarly situated in several respects. For example, Petitioner had a very extensive criminal history, while there is no indication that Cherlea had any criminal history apart from the crimes for which he was then incarcerated. Moreover, the Parole Board indicated that Cherlea was remorseful and had a satisfactory institutional adjustment, while Petitioner was angry, "extremely agitated," and disruptive, and had a poor institutional adjustment. *Id.* at pp. 21, 23 and 32.

Fourth, Petitioner maintains that New York Executive Law § 259-i is unconstitutional "as written and as applied by the parole board." Petition [#1] at p. 2. However, Petitioner's arguments on this point largely involve the wisdom of the statute from a public policy standpoint. For example, Petitioner insists that denying CPDO to

eligible inmates should ordinarily be forbidden because it results in the State of New York incurring unnecessary costs for housing and maintaining inmates who could be sent back to their own countries. *Id.* at pp. 16-17.   Because of that, Petitioner maintains, this Court should initiate a revision of New York's parole statute:

> The time has come for the deportation section in § 259-i to be revamped and written in an easy to read and understand manner, even detailing the reasons upon which deportation can be denied, and that otherwise it [deportation] is to be an automatic thing.   Furthermore, such revamped section should mandate that the deportations section is to be vested upon a newly created Deportations Bureau within the governor's office, and that since as to deportations it concerns [sic] there is no need to have a hearing (with the presence of the inmate) the decision is to be made simply by checking that all appropriate facts and information are true and correct. Doing away with this nonsense of CPDO because deportation has nothing to do with parole to the NY community. [sic]  . . .   I have stated the above because this court should take it upon itself to contact the governor about it or the adequate people who can compel this to be done, or an office or body that has the initiative and the wherewithal to compel the appropriate people to file an urgently expedited legislative proposal on this matter.

*Id.* at p. 18-19.   Petitioner also alleges, without any support, that Parole officials are improperly denying requests for CPDO because they are secretly benefitting from payments to the State of New York from the federal goverment.

Fifth, Petitioner maintains that it is "[u]nconstitutional for the Division of Parole to be the state agency with the authority to deny or grant deportations." Petition [#1] at p. 2.   On this point, Petitioner states that

> [t]he division of parole is inherently a policing and supervising agency and it has no jurisdiction in other countries to police or supervise those

[persons] that go deported.  Deportation and parole to the community have absolutely nothing to do with each other, and the factors that must be analyzed when contemplating the granting of release to the U.S. community under supervision are irrelevant to those like me who in any event must be deported.

Petition [#1] at p. 3.

Additionally, Petitioner contends that the state courts improperly denied his habeas petition for failure to exhaust administrative remedies.  Petition [#1] at pp. 8-9.  When Petitioner filed his state habeas petition, he indicated that he was not required to exhaust administrative remedies.  *See*, Steward Decl., Ex. B, State Habeas Petition, unnumbered p. 5 (Stating that the Parole Board appeal process was a "phantom process (in fraud)," and that therefore "there is no need in this case to exhaust remedy in such situation.").  However, Petitioner now contends that the state's exhaustion requirement should have been "excused," because the Division of Parole did not issue a decision within four months.  *See, id.* at p. 9 ("[T]he court's decision to deny the habeas came [on September 28, 2010,] 11 days after the 4 month limit within which the [administrative] parole appeal must be decided.  . . .  [The Parole Division] had the appeal papers for 4 months and did not make a decision therein.  Everything else is irrelevant.").  On this point, Petitioner is apparently referring to 9 NYCRR § 8006.4(c), which provides that an inmate's administrative remedies will be deemed exhausted if the Division of Parole Appeals Unit fails to issue a decision within four months.[10]

---

[10] *See, Alexander v. New York State Bd. of Parole*, 175 A.D.2d 526, 528, 572 N.Y.S.2d 792, 793, n.1 (3d Dept. 1991) ("9 NYCRR 8006.4(c) provides that if respondent's Appeals Unit fails to issue its findings and recommendation within four months of an inmate's perfection of his

10

However, as noted above, Petitioner filed the state habeas petition on June 24, 2010, approximately only one month after he filed his administrative parole appeal, and three months before the Parole Division's four-month window expired. Therefore, while it eventually turned out that the Division of Parole did not issue a decision on Petitioner's administrative appeal within four months, Petitioner had already filed his state habeas petition long before the four-month period discussed in 9 NYCRR § 8006.4(c) had expired.

Finally, Petitioner contends that the state courts erred in denying his habeas petition on the grounds that it was improperly filed. Petitioner admits that under New York law, "a denial of parole may not be challenged by way of a habeas corpus [petition]. It must be done with a CPLR 'Article 78' [proceeding]." Petition [#1] at p. 10. Petitioner filed a habeas petition, not an Article 78 petition, and the New York State Supreme Court, Appellate Division, Third Department, denied his petition, in part, on that ground. However, Petitioner defends his action to this Court by stating that he is not actually seeking parole, but rather, deportation. *See*, Steward Decl., Ex. B, State Habeas Petition, unnumbered pp. 6-7 ("What is requested of this Court is not to order a new parole hearing, but my immediate release for deportation . . . . This action is thus properly a habeas corpus and can not be converted to an Article 78 proceeding!"). In this regard, Petitioner contends that "parole" "means release to the NY community to serve the rest of the sentence under supervision," for which he is not eligible, since

---

administrative appeal, the inmate may deem his administrative remedy exhausted and thereupon seek judicial review.")

he is subject to a final order of removal. *Id*. ("Because I can not go to live in the U.S. community a denial of parole is not what I challenge."). On the other hand, he contends that deportation would result in his complete "freedom," and that therefore habeas corpus is the appropriate state procedural vehicle to challenge a denial of CPDO. Furthermore, he contends that New York's rule requiring that denials of parole be challenged in Article 78 proceedings, rather by petitions for habeas corpus, is contrary to "common sense and fundamental fairness." *Id*. Consequently, he maintains, he should have been permitted to challenge the denial of CPDO through a habeas petition in state court, rather than an Article 78 proceeding.

In response to Petitioner's claims, Respondent maintains, first, that Petitioner did not exhaust his claims at the state level, since he never pursued an Article 78 proceeding following the denial of his parole appeal, but instead, improperly filed a habeas petition pursuant to Article 70. *See*, Respondent's Brief [#8] at p. 9 ("Because petitioner never commenced an Article 78 proceeding to challenge the parole denial, he has not exhausted any of the claims before this Court."). However, Respondent indicates that since the time for Petitioner to file an Article 78 proceeding has now expired, the Court must treat Petitioner's claims as exhausted but procedurally defaulted. Defendant also states that Petitioner cannot make the required showing to overcome such procedural default, since his claims lack merit.

Petitioner subsequently filed a reply [#9] in which he reiterates his earlier arguments. Specifically, with regard to the aforementioned alleged procedural defaults, he states, first, that a habeas petition under Article 70, and not an Article 78 procedure,

12

was the appropriate way to challenge the denial of CPDO, Reply [#9] at p. 6; and second, that he either exhausted his administrative remedies before filing the state habeas petitioner, or that such failure to exhaust should be overlooked because he is a layman. *See, id.*at p. 4.

DISCUSSION

Before addressing the merits of the petition, the Court notes that Petitioner has filed two motions for appointment of counsel. (Docket Nos. [#6] & [#10]).  Having considered those applications in light of the relevant factors, see, *Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997); *see also Hodge v. Police Officers*, 802 F.2d 58 (2d Cir. 1986), they are denied.  Petitioner has also filed several applications asking the Court to recuse itself. (Docket Nos. [#11], [#13] & [#14]).  Those applications lack merit and are denied.  Petitioner also filed a motion [#12] requesting a ruling, which is denied as moot.

Turning to the merits of the case, the Court agrees with Respondent that the petition should be denied on the merits, and therefore declines to engage in a lengthy analysis of the alleged procedural defaults.  In this regard, the general legal principles are well-settled:

> Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), we may grant habeas relief with respect to a claim that was adjudicated on the merits in state court only if the state court's judgment "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding." *Id*. § 2254(d)(2). Under this standard, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, ––– U.S. ––––, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011) (*quoting Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)).

*Robles v. Dennison*, No. 10–4480–pr, 449 Fed.Appx. 51, 52-53, 2011 WL 5868408 at * 1 (2d Cir. Nov. 23, 2011). In this case, the decisions of the New York State courts were neither contrary to nor an unreasonable application of clearly established Supreme Court law.

At the outset, the Parole Board did not violate Petitioner's Fourteenth Amendment right to procedural due process in connection with his request for CPDO. Contrary to Petitioner's belief, he did not have a protected liberty interest in obtaining CPDO, which is a type of parole:

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005). "In order for a state prisoner to have an interest in parole that is protected by the Due Process Clause, he must have a legitimate expectancy of release that is grounded in the state's statutory scheme." *Barna v. Travis*, 239 F.3d 169, 170 (2d Cir.2001) (per curiam). We have squarely held that because the New York parole scheme is not one that creates a legitimate expectancy of release, "[prisoners] have no liberty interest in parole, and the protections of the Due Process Clause are inapplicable." *Id*. at 171; *see also id*. ("Neither the mere possibility of release, nor a statistical probability of release, gives rise to a legitimate expectancy of release on parole." (citations omitted)).

14

*Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012).

At most, inmates such as Petitioner have "minimal due process rights" that are "limited to not being denied parole for arbitrary or impermissible reasons." *Graziano v. Pataki*, 689 F.3d at 115; *see also, id.* at 116 ("[T]o state a claim for violation of their minimal due process rights, Plaintiffs must allege that they were denied parole based on an inappropriate consideration of a protected classification or an irrational distinction.") (citation and internal quotation marks omitted).  Petitioner, though, does not claim that his application for CPDO was denied for arbitrary or impermissible reasons, but instead, he contends that the Parole Board *never decided* his application, because the Board's decision did not specifically refer to CPDO.  However, it is clear that the Board denied Plaintiff's request for parole, which encompasses CPDO. *See*, Executive Law § 259-I.  Petitioner's claim in this regard essentially is that the Parole Board's decision did not expressly mention CPDO.  New York law, though, requires that the Parole Board consider information related to CPDO, which the Board clearly did here, but does not require that the Board's decision specifically discuss CPDO. *See, Graziano v. Pataki*, 689 F.3d at 113 ("[A]lthough the Board must provide the inmate with a proper hearing in which only the relevant guidelines are considered, it need not expressly discuss each of these guidelines in its determination.") (citation and internal quotation marks omitted).  Moreover, the Parole Board's failure to discuss the CPDO factor in its decision did not violate due process. *See, Duemmel v. Fischer*, No. 09-0468-pr, 368 Fed.Appx. 180, 182, 2010 WL 726306 at * 1 (2d Cir. Mar. 3, 2010) ("[N]othing in the due process concepts as they have thus far evolved requires the

15

Parole Board to specify the particular 'evidence' in the inmate's file or at his interview on which it rests the discretionary determination that an inmate is not ready for conditional release.") (*quoting Greenholtz v. Inmates of Neb. Penal & Correctional Complex*, 442 U.S. 1, 15, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), internal quotation marks omitted).

Furthermore, to the extent Petitioner maintains that the state courts that considered his habeas petition violated his right to procedural due process by "purposely and maliciously misstating the grounds for his application," the Court disagrees.  In that regard, Plaintiff contends that the state courts falsely indicated that he was objecting to the Parole Board's denial of his CPDO request, when he actually was claiming that the Board neither granted or denied his request.  Moreover, Petitioner contends that the state courts improperly characterized his papers as arguing that the Parole Board was required to grant his request for CPDO.  However, the state court decisions fairly and accurately characterized Petitioner's arguments.  For example, Petitioner did, in fact, argue in state court, and continues to argue now, that on the facts of this case, the Parole Board was required to grant him CPDO.  On this point, Petitioner argues, though incorrectly, that there are only three reasons why the Parole Board may deny a request for CPDO:  1) the inmate's country of origin refuses to allow him to return; 2) the inmate is a terrorist; or 3) the inmate is likely to  retaliate against witnesses or their families in his home country. *See*, Petition [#1] at p. 7.  Petitioner contends that none of those factors applies to him, and that the Parole Board was therefore required to grant him CPDO. *Id*.  The state courts did not mis-characterize Petitioner's papers on

16

this point or in any other respect.   For all of the foregoing reasons, Petitioner's procedural due process claim lacks merit.

To the extent that Petitioner is attempting to raise a substantive due process claim, his argument similarly lacks merit. The law on this point is clear:

> To establish a violation of substantive due process, plaintiff must demonstrate that the action taken by the Parole Board was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), *quoted in Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir.2005). To "shock the conscience," official conduct must be so "brutal and offensive that it [does] not comport with traditional ideas of fair play and decency." *Id*. at 847, *quoted in Robles v. Dennison*, 449 F.App'x 51, 55 (2d Cir.2011).

*Walker v. Mattingly*, No. 09–CV–845–JTC, 2012 WL 1160772 at * 8 (W.D.N.Y. Apr. 5, 2012). Petitioner has not identified any action by the Parole Board that would approach that level of conduct.

Plaintiff's contention that the Parole Board violated his federal equal protection rights similarly lacks merit.   The law in this regard is well-settled:

> "The Equal Protection Clause of the Fourteenth Amendment requires the government to treat similarly situated persons alike." *Missere v. Gross*, 826 F.Supp.2d 542, 560 (S.D.N.Y.2011). Because Plaintiff does not allege to be a member of a protected class,[11] he may proceed under one of two equal protection theories, selective enforcement or "class-of-one." *Id*.

To successfully plead an equal protection claim, a plaintiff must assert that

---

[11] Petitioner does not allege that Cherlea was treated better because of any improper classification. See, Petition [#1] at pp. 13-14; Reply [#9] at pp. 6-7.

he was treated differently from similarly situated individuals and either (i) that "such differential treatment was based on impermissible considerations such … as a malicious or bad faith intent to injure a person" ("selective prosecution" equal protection) or (ii) that there was a "no rational basis for the difference in treatment" ("class-of-one" equal protection), *Cobb v. Pozzi*, 363 F.3d 89, 110 (2d Cir.2004).

*Victory v. Pataki*, No. 02–CV–0031, 2013 WL 4539296 at *17 (W.D.N.Y. Aug. 27, 2013).  In this case, Petitioner is asserting a "class-of-one" claim, since he merely contends that there was no rational basis for the Parole Board to grant CPDO to Cherlea and not to him.[12]  On that issue, Petitioner essentially maintains that since the Parole Board granted CPDO to Cherlea, it should also have granted it to him, since Cherlea's crimes were worse than his. *See, e.g.*, Petitioner's Reply [#9] at pp. 6-7.  However, Petitioner has not shown that he and Cherlea were similarly situated in general, let alone to the high degree required to maintain a "class-of-one" claim. *See, Green v. McLaughlin*, No. 11–5451–pr, 480 Fed.Appx. 44, 47, 2012 WL 1592621 at *3 (2d Cir. May. 8, 2012)("[P]laintiffs alleging a class-of-one equal protection violation must, *inter alia*, show an extremely high degree of similarity between themselves and the persons to whom they compare themselves.") (citation and internal quotation marks omitted).  Instead, Petitioner's contention that he was a better candidate for CPDO than Cherlea is merely his opinion, since as discussed earlier, Petitioner had a much worse

---

[12]There is no indication that the Parole Board denied Petitioner parole based on a suspect classification or out of a desire to harm him personally. *See, Graziano v. Pataki*, 689 F.3d at 116, n. 3 (Indicating that denial of parole violates an inmate's federal equal protection rights when "the denial was based on race, religion, or intent to punish or inhibit the exercise of constitutional rights, or malicious or bad faith intent to injure a person.").

overall criminal record and institutional record than Cherlea, in addition to the fact that Cherlea apparently made a much more favorable impression at his Parole Board appearance than Petitioner.[13]   Accordingly, Petitioner's equal protection claim lacks merit.

Lastly, Petitioner's contention that Executive Law § 259-i is unconstitutional also lacks merit.   In that regard, Petitioner maintains that it is "[u]nconstitutional for the Division of Parole to be the state agency with the authority to deny or grant deportations," since "[d]eportation and parole to the community have absolutely nothing to do with each other, and the factors that must be analyzed when contemplating the granting of release to the U.S. community under supervision are irrelevant to those … who in any event must be deported." Petition [#1] at pp. 2-3. Petitioner also contends that the Parole Board is not properly administering the statute, since the Board ought to grant most CPDO applications because it would result in economic savings to the State of New York.   Along that same line, he maintains that because the Parole Board denies many such applications, it must mean that the Parole Board is somehow illegally benefitting from the denials.

At the outset, Petitioner's understanding of Executive Law § 259-i is mistaken. In his papers, Petitioner refers to the Parole Board as having a duty "of deciding whether to deny or grant deportation." *See*, Petition [#1] at p. 8.   Petitioner further asserts that because he is an alien, the Parole Board did not have the option of granting him parole

---

[13] Compare, Cherlea's Parole Board Decision, Petition [#1], Exhibit F, with Petitioner's Parole Board Decisions, Petition [#1] at Exs. A & B).

in the ordinary sense, but rather, the Parole Board's only option was to grant or deny him "deportation/CPDO." See, Petition [#1] at p. 1.  However, the Parole Board does not have the ability to deport anyone.  The Parole Board was limited to deciding whether to release Petitioner from the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") prior to the completion of his sentence.

In that regard, and contrary to what Petitioner states, it is the Court's understanding that the Parole Board could have granted parole to Petitioner without regard to CPDO.  It may be true, as Petitioner maintains, that because he was subject to a final order of removal issued by the Federal Bureau of Immigration Customs and Enforcement ("ICE"), he would never actually have been able to be released back into the U.S. community.  However, that would have been because of ICE's actions, not because of the Parole Board's.  On the other hand, if the Parole Board had granted Petitioner such parole, it is possible that Petitioner could have successfully challenged his final order of removal, which would then have allowed him to re-enter society in the U.S.  The difference between parole and CPDO is that the latter *requires*, as a condition of its granting, that the inmate actually be deported.  Consequently, if an inmate were granted CPDO, and he then successfully challenged his final order of removal, or if he could not be deported for some other reason, the Parole Board could re-take him into state custody. *See*, Executive Law § 259-i(d)(I).

In any event, Petitioner has not made any plausible showing that Executive Law

§ 259-i is unconstitutional.[14]   At most, he merely expresses his personal dissatisfaction with the statute and with the Parole Board's exercise of its discretion.   Accordingly, the fourth and fifth claims of the Petition [#1] lack merit.

CONCLUSION

Petitioner's applications for appointment of counsel [#6][#10], for recusal [#11][#13][#14], and for a ruling [#12] are denied.   Petitioner's application for a writ of *habeas corpus* is denied, and the petition is dismissed.   The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962).   Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

The Court also finds that no certificate of appealability should issue here, since petitioner has not made a substantial showing of the denial of a constitutional right. *See*, 28 U.S.C. § 2253(c)(2) (Providing, in relevant part, that "[a] certificate of

---

[14] *See, Tansley v. Grasso*, 315 F.Supp. 513, 516 (S.D.N.Y. 1970) ("State statutes validly enacted are presumed to be constitutional. *United States v. Carolene Products Co.*, 304 U.S. 144, 148, 58 S.Ct. 778, 82 L.Ed. 1234 (1938); *Becker Steel Co. v. Cummings*, 296 U.S. 74, 80, 56 S.Ct. 15, 80 L.Ed. 54 (1935); *Alaska Packers Assn. v. Industrial Accident Commission*, 294 U.S. 532, 543, 55 S.Ct. 518, 79 L.Ed. 1044 (1935). It is the plaintiffs' burden, if they are to prevail, to demonstrate the invidious discrimination they have alleged. *Home Telephone & Telegraph Co. v. Los Angeles*, 211 U.A. 265, 281, 29 S.Ct. 50, 53 L.Ed. 176 (1908); *Alaska Packers Assn. v. Industrial Accident Commission, supra.* In *Alaska Packers*, the Supreme Court, in upholding a California statute, stated: "'Indulging the presumption of constitutionality which attaches to every state statute, we cannot say that this one, as applied, lacks a rational basis or involved any arbitrary or unreasonable exercise of state power.' 294 U.S. at 543, 55 S.Ct. at 522.").

appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also*, *Miller-El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 1039-1042 (2003) ("Under the controlling standard, a petitioner must show that reasonable jurists could debate whether (or for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (citation and internal quotation marks omitted).

So Ordered.

Dated:      Rochester, New York
            January 27, 2014

                              ENTER:


                              /s/ Charles J. Siragusa
                              CHARLES J. SIRAGUSA
                              United States District Judge